IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **RODNEY J. LUCAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:06-00968 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Doc. Nos. 9 and 11.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 4 and 5.)

The Plaintiff, Rodney J. Lucas (hereinafter referred to as "Claimant"), filed an application for DIB on January 20, 2005 (protective filing date), alleging disability as of December 8, 2004, due to a heart condition, diabetes, bad left ankle, high cholesterol, fatigue, and shortness of breath. (Tr. at 51, 52-53, 69.) The claim was denied initially and on reconsideration. (Tr. at 22-24, 29-31.) On July 28, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 32.) The hearing was held on March 30, 2006, before the Honorable Charles R. Boyer. (Tr. at 218-42.) By decision dated June 28, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-19.) The ALJ's decision became the final decision of the Commissioner on September 13, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On

November 16, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

>       (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since his alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from coronary artery disease and diabetes, which were severe impairments. (Tr. at 15-16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant had a residual functional capacity to perform light work consisting of

> lifting and/or carrying (including upward pulling) as well as pushing and/or pulling (including operation of hand and/or foot controls) 20 pounds occasionally and 10 pounds frequently; standing and/or walking (with normal breaks) about 6 hours in an 8 hour workday; and, sitting (with normal breaks) for a total of about 6 hours in an 8 hour workday. The claimant could occasionally perform climbing, balancing, stooping, kneeling, crouching, and crawling. There were no visual, manipulative, or communicative limitations. Environmentally, the claimant should avoid concentrated exposure to extreme cold or heat. The claimant should also avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights).

(Tr. at 17.) At step four, the ALJ found that Claimant retained the residual functional capacity to perform his past relevant work as a cashier, as it was generally performed in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 3, 1953, and was 53 years old at the time of the administrative hearing and the date of the ALJ's decision. (Tr. at 52, 221.) Claimant had a high school education, completed one semester of college, and completed training at a truck driving school. (Tr. at 75, 223.) In the past, he worked as a cashier, maintenance worker, security guard, and truck driver. (Tr. at 19,

70, 224-27, 240.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not employing the services of a medical expert. (Doc. No. 10 at 7-9.) Claimant asserts that the ALJ dismissed "the extremely bad test results of a December 2005 cardiac stress test" because the test was performed after Claimant's date last insured, September 30, 2005. (Id. at 7.) Claimant further asserts:

> It would certainly be interesting to know from a medical expert whether results of the type indicated in the December 2005 stress test developed overnight or over the time period following Plaintiff's December 8, 2004 heart attack or at the time of the heart attack. This seems like a complex medical question that the ALJ is not qualified to answer being a lawyer and not a doctor.

(Id.) Claimant therefore, contends that the ALJ, as a layperson, was required to refer the issue regarding the stress test a neutral medical advisor. (Id. at 7-8.)

The Commissioner asserts that because the December, 2005, cardiac testing evidence is dated after his insurance status expired, the evidence was irrelevant to the determination of disability. (Doc. No. 11 at 8.) Citing the Hearings Appeals and Litigation Law Manual (HALLEX) § I-2-5-34, the Commissioner further asserts that the decision to obtain expert testimony remains in the ALJ's discretion. (Id.) Moreover, the Commissioner asserts that further testing was recommended following the December, 2005, cardiac tests and that six months after Claimant's date last insured expired, no course of treatment had been decided. (Id. at 8-9.) The Commissioner further

asserts that the other medical evidence of record supports the ALJ's decision that Claimant was not disabled prior to his date last insured, and therefore, Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Id. at 9.)

As the Commissioner notes, the decision to call a medical expert at the administrative hearing is left to the discretion of the ALJ. See 20 C.F.R. §§ 416.927(f)(2)(iii); 404.1527(f)(2)(iii); 404.1529(b) (2006); see also Siedlecki v. Apfel, 46 F. Supp.2d 729, 732 (N.D. Ohio 1999). As the Court stated in Siedlecki, the Regulations give the ALJ discretion whether to call on a medical advisor, and the ALJ is responsible for reviewing the evidence and resolving conflicts in the medical evidence. 46 F.Supp.2d at 732.

In the instant case, the medical record was sufficient for the ALJ to make his decision without the testimony of a medical expert. The record contains medical evidence in the form of treatment records from providers, as well as opinion evidence from DDS physicians who opined that Claimant's impairments did not meet, medically equal, or functionally equal a listed impairment. (Tr. at 101-10, 111-44, 145-47, 149-50, 162-69, 196-97, 201-03.) The Regulations note that these providers are experts in the field of disability determination. See 20 C.F.R. § 416.927(f)(2)(I) (2006).

The medical record reveals that on December 8, 2004, Claimant suffered a myocardial infarction.[2] (Tr. at 15-16, 101-04, 111-14.) An initial EKG revealed acute anterior myocardial infarction, with a left ventricle ejection fraction of thirty percent. (Tr. at 103.) Claimant underwent

---

[2] The Court notes that the myocardial infarction occurred at the heels of Claimant's refusal to take prescribed medications and his decision to take herbal remedies, despite his physicians' warning regarding the risks associated with uncontrolled glucose and cholesterol, including blindness, renal failure, stroke, myocardial infarction, and loss of limbs. (Tr. at 156.)

cardiac catheterization with placement of a stent. (Tr. at 113.) Claimant was prescribed nitroglycerin and other medications, and was advised to change his lifestyle to include a healthy diet and exercise, and to quit smoking. (Tr. at 113-14.)

On January 11, 2005, Dr. Qarab H. Syed, M.D., a cardiologist at the Beckley Veteran's Administration Medical Center ("VAMC"), noted Claimant's reports of chest pain, which he described as a dull ache without tightness, but accompanied by shortness of breath on exertion. (Tr. at 149.) Claimant however, attributed the shortness of breath to having been out of shape. (Id.) Claimant denied palpitations, dizziness, or syncopal spells, and reported that he was going to start exercising on his own as he was very concerned about increasing his cardiovascular health. (Id.) Dr. Syed noted an ejection fraction of fifty-three percent, with anterioapical hypokinesis. (Tr. at 150.) He diagnosed coronary artery disease status post stent placement, hypercholesterolemia, and diabetes mellitus, type II. (Id.) Dr. Syed continued Claimant's medical therapy, advised on dietary measures for weight reduction and physical activity, and medically cleared Claimant to begin exercising with Notro SO on his person. (Id.)

Claimant again reported to the VAMC on February 22, 2005, with complaints of shortness of breath on minimal exertion and feelings of weakness in the mid afternoon and knee buckling. (Tr. at 145.) Dr. Seema Anand, M.D., continued Claimant's diagnoses of January 11, 2005, but noted that the diabetes was better controlled and the hyperlipidemia was improved. (Tr. at 147.)

On March 21, 2005, Gomez A. Rafael, M.D., a state agency physician, reviewed the medical record and opined that Claimant was capable of performing light exertional work, with occasional postural limitations. (Tr. at 162-64.) He further opined that Claimant should avoid concentrated exposure to extreme cold and heat; fumes, odors, dusts, gases, poor ventilation, etc.; and hazards,

including machinery and heights. (Tr. at 166.) Dr. Gomez noted that Claimant was not entirely credible as he was non-compliant with his treatment for diabetes and HTN. (Tr. at 167.) He further noted that Claimant's cardiac condition was being treated medically and was stable. (Id.) On July 20, 2005, Dr. Marcel Lambrechts, M.D., another state agency physician affirmed Dr. Gomez's assessment, noting that there were "[n]o new physical reports or allegations." (Tr. at 169.)

Claimant's insured status expired on September 30, 2005.[3] (Tr. at 15, 52.) On October 20, 2005, Claimant reported that he was walking at least two miles four times a week. (Tr. at 197.) On December 7, 2005, Claimant underwent cardiac testing. (Tr. at 201-03.) During a Cardiolite Stress Test, Bruce Protocol treadmill test, Claimant achieved a maximum heart rate during exercise of 160 beats per minute, or ninety-five percent of his predicated heart rate and exercised to 4.5 METS without chest pain, heaviness, tightness, or pressure in his chest during exercise or recovery. (Tr. at 201-02.) This treadmill test was considered negative. (Tr. at 202.) A SPECT myocardial perfusion scan revealed apical myocardial infarction with surrounding ischemia, basal wall myocardial infarction, and basal inferior wall myocardial infarction, with a severely depressed ejection fraction of thirty-two percent. (Tr. at 203.) Diagnostically, these studies suggested a high probability of angiographically significant coronary artery disease. (Id.) Prognostically, the tests revealed that Claimant was at an intermediate risk of major coronary events in one year. (Id.) It was recommended that Claimant be considered for coronary angiography and cardiac catheterization. (Id.)

---

[3] Claimant's insured status for purposes of DIB expired on September 30, 2005. To be entitled to disability insurance benefits, a claimant must have enough social security earnings to be insured for disability as described in 20 C.F.R. § 404.130. See 20 C.F.R. § 404.315 (2006); see also 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131 (2006). Claimant's insured status expiration date means that he had to establish disability on or prior to this date to be entitled to benefits.

Despite Claimant's arguments, an ALJ is not required to have a medical expert present to testify at a hearing. The Regulations provide that ALJs "*may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 . . . ." 20 C.F.R. § 404.1527(f)(2)(iii) (2006) (emphasis added). As the Commissioner notes, further testing to confirm the results of the December, 2005, cardiac tests was recommended. (Tr. at 179-80, 202-03.) However, as of the date of the administrative hearing, March 30, 2006 (six months after Claimant's date last insured), Claimant reported that no final decision had been made regarding treatment. (Tr. at 235.) Prior to his date last insured, the medical record reveals that Claimant was walking at least two miles four times a week (Tr. at 197.), that he had not taken any nitroglycerin since it was prescribed in December, 2004 (Tr. at 234.), or experienced chest pains since December 8, 2004, though he experienced shortness of breath on minimal exertion. (Tr. at 145.) Based on the foregoing, the Court finds that the substantial evidence of record supports the ALJ's decision that Claimant was not disabled as of September 30, 2005, and therefore, he was not required to obtain testimony from a medical expert.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 11.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 28, 2008.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge